IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** <br><br> v. <br><br> **JIM CARTER, JR. and BRYCE JOHNSON,** <br><br> *Defendants.* | **CRIMINAL ACTION NOS.** <br> 2:24-cr-00287-TES-JTA-1 <br> 2:24-cr-00287-TES-JTA-6 |

**ORDER DENYING DEFENDANTS' MOTIONS FOR NEW TRIAL**

Before the Court are Defendant Jim Carter, Jr.'s Supplemental Motion for New Trial [Doc. 394] and Defendant Bryce Johnson's Motion for New Trial [Doc. 407]. The Court ordered the government to file a Response [Doc. 406] to Carter's motion, and the Court held an evidentiary hearing on July 23, 2025. [Doc. 396]; [Doc. 411]. After careful review of the arguments presented in the party's initial and supplemental briefs along with the testimony and evidence given during the hearing, the Court **DENIES** Defendants' motions.

A. <u>Procedural History</u>

On October 29, 2024, a grand jury in the Middle District of Alabama returned a Superseding Indictment [Doc. 185] that charged Carter with conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846. [Doc. 185, pp. 1–2]. In a separate count, the grand jury also charged Carter with possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(l). [*Id.*

at p. 2]. Represented by Cecilia Vaca, Carter took his case to trial, and the jury found him guilty on both counts. [Doc. 357, p. 1]. Along with Carter and seven other co-conspirators, the grand jury also charged Johnson with conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846. [Doc. 185, pp. 1–2]. Johnson, represented by Richard Keith, also went to trial, and like Carter, the jury found him guilty. [Doc. 360, p. 1].

Following the jury's verdict on May 19, 2025, Carter decided he wanted to represent himself, and he filed a Pro Se Motion for New Trial [Doc. 370] on May 27, 2025. [Doc. 375]. Since Ms. Vaca still represented him, the Court struck his pro se motion and advised him that "all requests for court action must be filed through his appointed attorney." [Doc. 374, pp. 1–2]. On June 18, 2025, the Court held an ex parte hearing on the issue of Carter's representation and permitted Ms. Vaca to withdraw as his attorney. Newly appointed counsel, Clay Benson, Jr., came on the scene. [Doc. 387]; [Doc. 388]; [Doc. 389].

Now represented by Mr. Benson, Carter filed the pending Supplemental Motion for New Trial as well as an Addendum [Doc. 395] to that motion on July 2, 2025, and July 3, 2025, respectively. Before proceeding any further, the Court notes that some of the exhibits attached to Carter's counsel-filed motion and addendum are handwritten arguments from Carter himself. *See, e.g.*, [Doc. 394-1, pp. 1–3]; [Doc. 395-1, pp. 1–8]. While the Court thought it made itself clear—that "[it] does not accept pro se

correspondence from a criminal defendant represented by counsel"—Carter apparently instructed Mr. Benson to submit his (Carter's) handwritten arguments *through* the motion Mr. Benson filed on his behalf. [Doc. 374, p. 1]; *see also* [Doc. 394, p. 2]; [Doc. 395, p. 1]. Despite Carter's explicit goal of circumventing the Court's instruction, the Court still considered his handwritten arguments because Mr. Benson so heavily relied upon them. [Doc. 412, Transcript of Proceeding, p. 3:5–22].

On June 23, 2025, Johnson followed Carter's lead and filed a Pro Se Motion to Appoint New Counsel [Doc. 390-1]. As with Carter's pro se motion, the Court, consistent with its usual policy, directed the Clerk of Court to forward Johnson's pro se motion to his attorney. [Doc. 390]. Again, at that time, Mr. Keith, who represented Johnson at trial, remained as counsel of record. [Doc. 390-1, p. 1]. Given that Johnson sought new counsel based on what he believes to be ineffective assistance and a conflict of interest, Mr. Keith filed a Motion to Withdraw [Doc. 391]. Following an ex parte hearing on July 9, 2025, the Court permitted Mr. Keith to withdraw as Johnson's attorney, and it appointed Jeffery Duffey in his place. [Doc. 391]; [Doc. 398]; [Doc. 399]; [Doc. 410].

B.  **Carter's Motion for New Trial**

As grounds for a new trial, Carter contends he only recently discovered that Mr. Keith (who, with three other co-defendants and their defense teams, sat just adjacent to Carter in representing Johnson *during* trial) had previously represented him—from

3

December 8, 2022, through January 9, 2023—on a petition for early termination of supervised released in a case from 2002. [Doc. 394, pp. 1–3]; *see* Motion for Early Termination of Supervised Release, *United States v. Carter*, No. 2:02-cr-00007-WKW-CSC (M.D. Ala. Dec. 8, 2022), Dkt. No. 375; *in connection with* Order, *United States v. Carter*, No. 2:02-cr-00007-WKW-CSC (M.D. Ala. Jan. 9, 2023), Dkt. No. 379. Based on this perceived "conflict of interest" and "the other reasons cited in his [handwritten] pro se motion," Carter requests a new trial. [Doc. 394, p. 3].

Carter contends that during trial he "discovered that [Johnson's] attorney ([Mr.] Keith) assisted the prosecution['s] star witness, Agent [Evan] Skeldon, by providing him with . . . Carter['s] phone number upon the request of a confidential informant so that he could obtain a Title III Intercept (wiretap)" for Target Telephone 2. [Doc. 394-1, pp. 1–2]; [Doc. 395-1, p. 1]. Carter contends that all of this came to light when Mr. Keith apparently leaned over to Carter during trial and asked Carter if he knew a Source of Information ("SOI") that Mr. Keith had also represented in the past. [Doc. 418, p. 2 ¶¶ 4–5, p. 4 ¶¶ 17–18]. Let's unpack that a little more.

Carter says that after reading the wiretap application that the government used to intercept his phone calls, "he was able to discern that [the SOI], through . . . Carter's former attorney[,] [Mr.] Keith, had given . . . Carter's phone number to Agent Skeldon." [*Id.* at p. 2 ¶ 6]. Put simply, Carter says that his previous representation by Mr. Keith is how Mr. Keith obtained Carter's phone number—the number that Mr. Keith eventually

4

gave to Agent Skeldon for his investigation against Carter and his co-defendants for *this* case. [Doc. 395-1, p. 2]. Carter argues that because Mr. Keith assisted Agent Skeldon by giving him Carter's phone number, Mr. Keith should have "resign[ed] off of this criminal case" altogether. [Doc. 394-1, p. 2]; [Doc. 395-1, pp. 1, 7–8].

The government, however, sees it differently. [Doc. 406, p. 3]. According to the government, Mr. Keith wasn't the source of Carter's phone number, Mr. Keith merely represented the SOI during the SOI's proffer to the Drug Enforcement Administration when he provided incriminating information (including Carter's phone number) about Carter to Agent Skeldon. [*Id.* at pp. 2–3]. Agent Skeldon, though, didn't "get" Carter's phone number from Mr. Keith because of Mr. Keith's earlier representation of him—the SOI gave the number to Agent Skeldon. *See* [*id.* at p. 3]. Specifically, during the SOI's proffer with Agent Skeldon, the SOI offered to give Agent Skeldon Carter's phone number. [Doc. 412, Transcript of Proceeding, pp. 78:12—81:8]. A couple of days after his proffer, the SOI followed through and called Mr. Keith, gave him Carter's number, and then, Mr. Keith relayed that information to Agent Skeldon. [*Id.* at pp. 82:19—83:6]. Mr. Keith never voluntarily "gave up" Carter's confidential information as Carter would have this Court believe.

"Once discovered," Carter argues that the supposed conflict "impaired" Ms. Vaca's ability to defend him during trial. [Doc. 418, p. 1 ¶ 3]. For example, in one of his pro se motions, Carter blames this "conflict" for Ms. Vaca's failure to file a motion to

suppress literally in the middle of trial based on "a false statement or omission" not included in the affidavit used to obtain the wiretap authorization. [Doc. 395-1, p. 3]. Carter argues that Ms. Vaca "*could* have" moved to suppress the wiretap as soon as he informed her—"during the closing of the government's case at trial"—of the potential conflict of interest between him, Johnson, and Mr. Keith. [*Id.* (emphasis added)]. To that, even Mr. Benson was at a loss during the July 23rd hearing as to exactly "how [Ms. Vaca] would have necessarily filed a motion to suppress after the government's case had rested." [Doc. 412, Transcript of Proceeding, p. 10:8–14]. And, of course, Carter never explained in his motions how any lawyer would have suppressed evidence that had already been admitted.

Further, Carter also contends that Mr. Keith "failed to file a suppression [motion]" for Johnson, whose wiretap was "turned in three days late." [Doc. 394-1, p. 2]. Referring to the "spillover" effect—"where overwhelming evidence of guilt is introduced against a [co-defendant] that would not have been admissible against the defendant in a separate trial"—Carter is adamant that "the conspiracy could not exist between" him, Johnson, or another one of his co-defendants, Michael Evans, "[a]bsent th[is] wiretap[]." [*Id.* at p. 2]; *U.S. v. Lopez*, 649 F.3d 1222, 1235 (11th Cir. 2011) (providing description of the "spillover effect").

To be clear, though, whether the wiretap recording for Target Telephone 2 (the subject phone that's front and center in Carter and Johnson's efforts for a new trial)

wasn't "immediately" sealed after the expiration of the wiretap authorization as required by 18 U.S.C. § 2518(8)(a) or whether suppression efforts "*could* have" been made—absent what Carter presses as a potential conflict of interest between him, Johnson, and Mr. Keith—requires much more context than Carter offers through his handwritten, pro se motions.[1] [Doc. 395-1, pp. 3 (emphasis added), 4]; [Doc. 412, Transcript of Proceeding, pp. 22:22–25; 71:6–17]. Regardless, Carter made it unquestionably clear during the hearing on July 23, 2025, that the legal basis for which he seeks a new trial is purely because Mr. Keith "compromised [Carter's] position" through his previous representation of Carter for the supervised release matter.[2] [Doc. 412, Transcript of Proceeding, pp. 9:9—10:7]. But remember—and this is critical—Mr. Keith didn't represent Carter at trial, Ms. Vaca did. She had no conflict at all.

---

[1] The Court further notes that none of the four co-defendants at trial moved to suppress the wiretap at issue, including the two co-defendants (one of whom was Evans) who do not claim they had conflicted counsel.

[2] With respect to Carter's contention that Federal Rule of Criminal Procedure 44(c) required a hearing to determine whether he "was o.k. with [Mr. Keith] not being disqualified," the Court notes that Rule 44(c) "treat[s] concurrent representation and prior representation differently, requiring a trial court to inquire into the likelihood of conflict whenever jointly charged defendants are represented by a single attorney"—"but not when counsel previously represented another defendant in a substantially related matter . . . ." *Mickens v. Taylor*, 535 U.S. 162, 175 (2002); [Doc. 395-1, p. 3].

Carter also presented an allegation of prosecutorial misconduct. [Doc. 395, pp. 5–8]. Specifically, Carter argues that the prosecution's "parad[ing]" of photos of all the co-defendants indicted in this case and discussion of their criminal conduct with the jury was improper. [*Id.* at p. 5]; [Doc. 412, Transcript of Proceeding, p. 99:2–6]. However, painting the picture of this conspiracy for the jury required a discussion of those co-defendants. Their involvement and role in this conspiracy was, notwithstanding Carter's arguments, highly relevant to this case, *see* Fed. R. Evid. 402, and Carter's arguments related to prosecutorial misconduct are baseless.

7

Here's how Mr. Benson framed Carter's perceived conflict of interest to the Court during the July 23rd hearing:

> MR. BENSON: Basically, that it's a conflict of interest that Mr. Carter was represented previously by Mr. Keith, and that information through that representation was given to Agent Skeldon. And Mr. Carter says that was the basis of the wiretap affidavit application that -- he said there was information -- because he gave him that phone number, that wiretap was indeed granted. The wiretap happened. Information was obtained through that wiretap. And Mr. Carter basically argues that that conviction would not have happened had it not been for those events. And he says the conflict is because Mr. Keith represented Mr. Carter previously, had that information, and gave that to Agent Skeldon incorrectly.
>
> THE COURT: Okay. So I want to make sure because, you know, this stuff is a little bit like Jello to me.
>
> So his sole reason for arguing that he wants a new trial is on what he thinks is an actual conflict of interest that substantially affected his lawyer's performance at trial; is that right?
>
> MR. BENSON: Compromised his position and gave the government information they would not have had, had not Mr. Keith through prior representation given that phone number to them. Had it not been for that, the conviction would not have happened.
>
> THE COURT: All right.

[Doc. 412, Transcript of Proceeding, pp. 9:9—10:7].

C. **Johnson's Motion for New Trial**

Now represented by Mr. Duffey, Johnson filed his Motion for New Trial on July 18, 2025. To support his efforts to obtain a new trial, Johnson argues that *his* conflict of

8

interest arises from Mr. Keith's "failure to disclose" the fact that he "had previously represented a [SOI] whose cooperation with federal investigators directly contributed to the government obtaining a wiretap order that was used to gather evidence against Johnson." [Doc. 419, p. 3]. Johnson claims that his defense was adversely affected because of what he sees as Mr. Keith's "divided loyalties." [*Id.*].

At the July 23rd hearing, Johnson testified that although he requested the discovery in this case from Mr. Keith, Mr. Keith never sent it. [Doc. 412, Transcript of Proceeding, p. 59:5–7]. Then, Mr. Keith, at some point, according to Johnosn, even told him that he "had grounds" to suppress the wiretap because it was "sealed three days late" in violation of § 2518(8)(a), but no motion to suppress as to that specific issue was ever filed. [*Id.* at pp. 57:24—58:2]; [Doc. 419, p. 3]. Based on everything, Johnson contends this:

> Had [Mr. Keith] pursued a challenge to the wiretap . . . he would have known by reviewing . . . the affidavit . . . in support of the application for wiretap approval that [his] former client had interests adverse to Johnson's defense. In the affidavit, . . . the [SOI] provided significant information about co-defendant Carter in addition to providing one of Carter's telephone numbers. . . . In conjunction with that, according to Agent Skel[d]on, there was a report in discovery that memorialized the interview with the [SOI] . . . that should have left no doubt in [Mr. Keith's] mind that the [SOI] was [also] [his] client.

[Doc. 419, pp. 3–4]. Arguing that a viable defense went unpursued because of Mr. Keith's "grave and material error" of failing to disclose this perceived conflict of interest, Johnson maintains that he was denied effective assistance of counsel and that

9

the interest of justice warrants a new trial. [*Id.* at p. 6].

   D.   **Legal Standard**

Under Federal Rule of Criminal Procedure 33, the Court "may . . . grant a new trial if the interest of justice so requires." Fed. R. Civ. P. 33(a). So, based on what they couch as the "newly discovered evidence" discussed above; Carter and Johnson think they are entitled to a new trial. *See* Fed. R. Civ. P. 33(b); [Doc. 394, p. 1]; [Doc. 395-1, p. 1]; [Doc. 407, pp. 1, 3]. The Eleventh Circuit has long set forth the five-part test that courts must apply when evaluating a motion for a new trial based on newly discovered evidence:

> (1) the evidence must be discovered following the trial; (2) the movant must show due diligence to discover the evidence; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material to issues before the court; and (5) the evidence must be of such a nature that a new trial would probably produce a new result.

*United States v. Hall*, 854 F.2d 1269, 1271 (11th Cir. 1988). All of these considered, what Carter and Johnson's efforts for a new trial really hinge on is whether a new trial would produce a different outcome than the one from May 2025? In short, the answer is no.

   E.   **Discussion**

      1.   **Carter's Conflict-of-Interest Claims Under *Cuyler v. Sullivan***

Although the visual stringboard of Carter and Johnson's lawyers mixed with who represented whom and who gave Carter's number to Agent Skeldon is somewhat convoluted, what we have here is a rather straightforward claim by Carter and Johnson

10

that a conflict of interest resulted in an unfair—that is, an *unconstitutional* trial. "But until a defendant shows that his [lawyer] actively represented conflicting interests, he has not established the constitutional predicate for [a] claim of ineffective assistance." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). The linchpin for an ineffective assistance claim is that a defendant *must* show that his lawyer's performance was adversely affected. *Id.*

While the government, Carter, and Johnson disagree on the "effect" that Mr. Keith's representation had in this case, on this much, they have to agree: For a defendant, who raised no objection at trial, to establish a Sixth Amendment violation because of a conflict of interest, the Supreme Court, under *Sullivan,* requires a showing that (1) the lawyer had an actual, not speculative, conflict of interest, and (2) the conflict adversely affected his lawyer's performance. *United States v. Novaton*, 271 F.3d 968, 1010–11 (11th Cir. 2001) (citing *Sullivan*, 446 U.S. at 348); *Pegg v. United States*, 253 F.3d 1274, 1277 (11th Cir. 2001); *Hunter v. Sec'y, Dep't of Corrs.*, 395 F.3d 1196, 1200 (11th Cir. 2005). Where, as here, the issue is one of successive representation, the Eleventh Circuit notes that the test for what constitutes an "actual conflict" requires a showing of inconsistent interests. *Freund v. Butterworth*, 165 F.3d 839, 859 (11th Cir. 1999) (en banc); *Smith v. White*, 815 F.2d 1401, 1405 (11th Cir. 1987), *cert. denied*, 484 U.S. 863 (1987).

> In order to prove that an "actual conflict" hindered the defendant's lawyer's performance, the defendant "must make a factual showing of inconsistent interests" or point to "specific instances in the record" to suggest an actual impairment of his . . . interests. Overall, the "actual conflict" inquiry is fact-

11

specific, consistent with the defendant's ultimate burden "to prove that his conviction was unconstitutional."

*Freund*, 165 F.3d at 859 (alterations adopted). Put simply, is there a divided loyalty from the lawyer to his clients? *See, e.g.*, *Fitzpatrick v. McCormick*, 869 F.2d 1247, 1252 (9th Cir. 1989) ("In successive representation, conflicts of interest may arise if the cases are substantially related or if the [lawyer] reveals privileged communications of the former client or otherwise divides his loyalties.").

When it comes to pointing to "specific instances in the record to suggest an actual conflict or impairment" of a defendant's interests, the successful defendant must show that "the [lawyer] made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other. If [the lawyer] did not make such a choice, the conflict remain[s] hypothetical." *Reynolds v. Chapman*, 253 F.3d 1337, 1343 (11th Cir. 2001) (quoting *Smith*, 815 F.2d at 1404). And, it has long been the law (even before the existence of the Eleventh Circuit[3]) that there is no ineffective-assistance-of-counsel violation where the perceived conflict is "irrelevant or merely hypothetical." *Foxworth v. Wainwright*, 516 F.2d 1072, 1077 n.7 (5th Cir. 1975) (citing cases). Should a defendant be unable to carry his burden of showing an *actual* conflict of interest, he is not entitled to relief from his conviction—here, a new

---

[3] The decisions handed down prior to the close of business on September 30, 1981, by the United States Court of Appeals for the Fifth Circuit (the 'former Fifth' or the 'old Fifth') "shall be binding as precedent in the Eleventh Circuit" for the court of appeals, the district courts, and the bankruptcy courts. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

12

trial—because a "speculation or merely hypothetical conflict of interest does not yield a Sixth Amendment violation." *Novaton*, 271 F.3d at 1011 (quoting *Burden v. Zant*, 24 F.3d 1298, 1305 (11th Cir. 1994)).

If a defendant *does* carry his burden of showing an actual conflict of interest, courts must then consider whether the conflict adversely affected the representation. *Id.*

> To prove adverse effect, a defendant must satisfy three elements. First, he must point to some plausible alternative defense strategy or tactic that might have been pursued. Second, he must demonstrate that the alternative strategy or tactic was reasonable under the facts. Because prejudice is presumed, the defendant need not show that the defense would necessarily have been successful if the alternative strategy or tactic had been used, rather he only need prove that the alternative possessed sufficient substance to be a viable alternative. Finally, he must show some link between the actual conflict and the decision to forgo the alternative strategy of defense. In other words, he must establish that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.

*Id.* (quoting *Freund*, 165 F.3d at 860) (alterations adopted); *see also Quince v. Crosby*, 360 F.3d 1259, 1264–65 (11th Cir. 2004); *Pegg*, 253 F.3d at 1278. Without an "adverse effect" being shown, there is no presumption that the defendant was prejudiced by a conflict of interest. *Id.*

The essence of any conflict of interest comes down to cross examination. *See United States v. Wheat*, 486 U.S. 153, 155–56 (1983). In a true conflict of interest case, the conflicted lawyer must almost always decide whether to elicit privileged information from the former client to favor his current client or, conversely, refuse to elicit privileged information from the former client to the detriment of his current client. But,

when as in this case, neither of the alleged conflicted lawyer's clients testify, such concerns evaporate. Carter chose to exercise his Fifth Amendment protections, and no party chose to call the SOI in question as a witness.

At no point during *this case* was there a substantial (or any) relationship between Mr. Keith's previous representation of Carter[4] and his representation of Johnson at trial. Without Mr. Keith's earlier representation of Carter being substantially and particularly related to his representation of Johnson, "then [the] defendant [does] not come even close to showing inconsistent interests." *Smith*, 815 F.2d at 1405–06. There is no reasonably conceivable way that Mr. Keith had to choose between an "inconsistent interest" in his representation of Johnson at trial because he represented Carter in a petition for early termination of supervised released in Carter's unrelated criminal case from 2002. Given that Mr. Keith did not suffer from any actual conflict, the Court easily concludes that a new trial isn't warranted for Carter.

2.  **Johnson's Ineffective Assistance Claims Under *Strickland v. Washington***

As for Johnson, the Court comes to the same conclusion. Clearly, regarding the

---

[4] Let's not forget that Carter surely knew (or should have known) that he actually retained Mr. Keith to file his petition for early termination in his earlier drug case. [Doc. 412, Transcript of Proceeding, p. 13:22–25]. This wasn't newly discovered evidence. And, to be fair, Carter doesn't complain about the prior representation per se. He was perfectly fine to have Mr. Keith represent Johnson and never complained about it. He now thinks that the government would never have learned about his phone number but for Mr. Keith. [*Id.* at p. 22:12–14]. However, Agent Skeldon clearly testified that he just called Carter's former probation officer, asked for the number, and the probation officer gave it to him. [*Id.* at pp. 82:19—83:6]. So, clearly, despite what Carter vehemently presents to this Court, the government had his number before the SOI ever proffered. Carter's allegations are much ado about nothing.

trial in this case, Carter cannot allege an ineffective assistance claim with respect to Mr. Keith because Mr. Keith didn't represent him. Mr. Keith, as we well know, did, however, represent Johnson, and this provides the basis for Johnson's contention that his Sixth Amendment right to the effective assistance of trial counsel has been violated. [Doc. 407, p. 4]. As Johnson argues, "[t]he standards governing ineffective assistance claims are set out in *Strickland v. Washington*, 466 U.S. 668 (1984)." [*Id.*].

"The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding." *Strickland*, 466 U.S. at 691–92. Thus, any deficiencies in a lawyer's performance must be prejudicial to the defense to constitute ineffective assistance under the Constitution. *Id.* at 692. Under *Strickland*, Johnson must satisfy a two-part test. *Quince*, 360 F.3d at 1265.

First, he "must show that [Mr. Keith's] performance was deficient, falling 'below an objective standard of reasonableness.'" *Id.* (quoting *Strickland*, 466 U.S. at 687–88). Second, Johnson "must show that [Mr. Keith's] deficient performance prejudiced [Johnson's] defense, in that there is a reasonable probability that the outcome would have been different but for [Mr. Keith's] unprofessional errors." *Id.* (citing *Strickland*, 466 U.S. at 694). While the Supreme Court has noted that "it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest," the required "[p]rejudice is presumed only if the defendant demonstrates that

[his lawyer] 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Strickland*, 466 U.S. at 692. Sound familiar? Importantly, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* "Virtually every act or omission [from a lawyer's trial strategy] would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* (internal citation omitted). Hence why the ineffective-assistance-of-counsel inquiry focuses on whether there is a reasonable probability—that is "a probability sufficient to undermine the confidence of the outcome"—that but for Mr. Keith's unprofessional errors, Johnson's trial would have had a different result? *See id.* An error by a lawyer, though, "even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

In answering this question, the Court is mindful that there is a strong presumption that Mr. Keith provided reasonable assistance, that Johnson "bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy," and that it must avoid using "hindsight" and endeavor to "evaluate the reasonableness of [Mr. Keith's] performance 'from [*his*] perspective at the time.'" *Quince*, 360 F.3d at 1265 (first citing *Strickland*, 466 U.S. at 689; and then quoting *Chandler v. United States*, 218 F.3d 1305, 1316 (11th Cir. 2000)).

In support of his ineffective assistance claim, Johnson argues that "[t]here were viable reasons for a challenge to the wiretap order" in this case. [Doc. 419, p. 4]. In other words, Johnson thinks that Mr. Keith's conflict prevented him from moving to suppress the wiretap obtained by the government in this case. Yet, no one—as the government points out—has shown how Mr. Keith's previous representation of Carter caused Mr. Keith to have conflicting interests when it came to his representation of Johnson. *See* [Doc. 437, p. 2].

Like Carter, Johnson invoked his Fifth Amendment protections, so there weren't any cross-examination concerns. Despite Johnson's best efforts, there just wasn't anything that Mr. Keith was prevented from doing because of his previous representation of Carter. On this, Mr. Keith provided crystal clear testimony.

> MR. ANDREU: Throughout your representation of Bryce Johnson in this case, did you recall that you had previously represented Jim Carter Jr.?
>
> MR. KEITH: No.
>
> MR. ANDREU: Did your previous representation of Jim Carter Jr. have any impact on how you represented Bryce Johnson in this case?
>
> MR. KEITH: Not at all.
>
> MR. ANDREU: Did it have any impact whatsoever on strategic decisions you made as part of Bryce Johnson's representation?
>
> MR. KEITH: None.

| | |
|---|---|
| MR. ANDREU: | Did it have any impact on whether . . . you filed a motion to suppress the Title III intercepts in this case? |
| MR. KEITH: | No. |
| MR. ANDREU: | Did it have any impact on your actual trial strategy in this case? |
| MR. KEITH: | No. |
| MR. ANDREU: | Any impact on whether . . . -- on how you advised Bryce Johnson in any way? |
| MR. KEITH: | I'm sorry. Say that -- |
| MR. ANDREU: | Did it have any impact on how you advised Bryce Johnson in any way? |
| MR. KEITH: | No. |

[Doc. 412, Transcript of Proceeding, pp. 48:18—49:15]. Plus, when it comes to any motion aimed at suppressing the wiretap from Target Telephone 2, Johnson offered no testimony from any source—or law for that matter—that any reasonable lawyer would have moved to suppress the wiretap because the government got Carter's number from his former lawyer. There simply isn't any actual conflict here because Carter's prior criminal case—more specifically, his early termination of probation from that case—had *nothing* to do with Mr. Keith's trial tactics or defenses for Johnson in *this case*, and, once more, no defendant testified at trial. Therefore, quite clearly, Mr. Keith wasn't defending Johnson with a conflicting interest. *Strickland*, 466 U.S. at 692

Even assuming, without deciding, that a § 2518(8)(a) sealing concern loomed

18

over the subject wiretap, there was still substantial evidence to convict. *See* [Doc. 406, pp. 3–4]. As the government argues, "the exclusion of the calls over Target Telephone 2 would not have altered the outcome of the case." [*Id.* at p. 4]. Had the wiretap from Target Telephone 2 been suppressed, the government contends "[t]hat would result in only one of the 41 calls introduced at trial being excluded." [*Id.*]. Where the evidence complained of, like the brief exchange intercepted over Target Telephone 2, is only a "slim portion" of the evidence against a defendant, a new trial is not required. *See United States v. Caro*, 589 F. App'x 449, 455 (11th Cir. 2014). The evidence to convict Carter and Johnson was "overwhelming" even when you exclude the wiretap from Target Telephone 2. *Id.* at 456.

### F. Conclusion

Based on the foregoing, neither Carter nor Johnson can demonstrate that they are entitled to a new trial based on their respective arguments. Accordingly, the Court **DENIES** Carter's Supplemental Motion for New Trial [Doc. 394][5] and Johnson's Motion for New Trial [Doc. 407].

**SO ORDERED**, 18th day August, 2025.

*S/ Tilman E. Self, III*
**TILMAN E. SELF, III**
**UNITED STATES DISTRICT COURT**

---

[5] As a result of this ruling, Carter's Addendum [Doc. 395] docketed as a motion stands **DENIED** as well.